## HATTER'S EX'ORS vs. LEWIS W. GREENLEE.

### *Error from Greene Circuit Court*—Before the Hon. A. CRENSHAW.

---

Where A. being arrested under legal process, on a charge of felony, and to procure his discharge, executes a deed to B., and the arrest is not evidently feigned and malicious, such deed cannot be avoided on the ground of duress of imprisonment.

Every *illegal* restraint of a man's liberty, is duress of imprisonment—and where the warrant is regular and legal, if it appears that the arrest under it, has been procured on a false charge, without probable cause, and as a pretext to cover an illegal design, it will be duress of imprisonment.

If a man be confined on a well founded charge, mal-treatment while under arrest, will be considered duress of imprisonment, so far as to invalidate any act produced by it.

This was an action of trover, for the conversion of a slave, brought against the testator of the plaintiff's in error. Greenlee claimed a recovery in this case, on the ground, that being under duress of imprisonment, threats, menaces, perturbation of mind, and false accusations, he had been induced to execute to Hatter, a bill of sale for a certain negro boy, Daniel—to recover whom this action was commenced. Also, that the same had been made as a composition of felony.

The facts, as they appear from the record, show, that Greenlee had been arrested in the state of Mississippi, on the charge of having stolen or concealed a negro slave, the property of Hatter; that when brought before the justice of the peace, who had issued the warrant, a compromise took place between Hatter and Greenlee; the condition of which was, that Greenlee, in consideration of his discharge, should execute a bill of sale to Hatter, of the slave Daniel, and give his

note for five hundred dollars. Hatter was to dismiss a suit for damages, then pending against Greenlee, and pay certain costs. Pursuant to this agreement, the slave was delivered.

Hatter's exrs<br>vs.<br>Greenlee.

There was some evidence introduced, for the purpose of showing that Hatter had probable cause for arresting Greenlee ; and in support of the defence, that the imprisonment was lawful.

The court charged the jury, that if the plaintiff, Greenlee, was under duress of imprisonment at the time the bill of sale for the said slave was executed, taken in connection with the threats and disturbance of mind under which he labored—from this they might infer, that the bill of sale, and the delivery of the negro, were not his free and voluntary act ; and if so, the contract was void, and the plaintiff was entitled to recover, although the imprisonment may have been under a lawful warrant. Also, that if the offence was under felony, the parties might compromise ; but that this principle had no bearing on the case before them. Under this charge, the jury rendered a verdict for the plaintiff, and exceptions having been taken to the opinions of the court, as expressed in the charge, the same was now assigned as error.

ERWIN, for Plaintiff.
1 *Bl. Com.* 137—6 *Mass. Rep.* 506—*Chitty on Contracts,* 192, 193.

STEWART, *contra.*
2 *Bacon,* 402—*Chitty on Con.* 53—6 *Mass. R.* 506—*Powell on Con.* 9, 31—13 *Mass. R.* 371—16 *Ves.* 159—2 *Stark. Ev.* 505, 210—2 *Strange,* 915—*Comyn Con.* 315, 334, 346—2 *Stark. Ev.* 481, 483—11 *Mass. R.* 379.

By Mr. Chief Justice LIPSCOMB :
This was an action of trover, to recover the value of a negro slave. The plaintiff, Greenlee, had conveyed the slave

to Hatter, by his deed, and at the same time had delivered him. It appears from the bill of exceptions, that Greenlee claimed a right of recovery in this action, on the ground of duress of imprisonment, threats and menaces, perturbation of mind, and false accusation of felony ; and also, that the bill of sale was given on the composition of felony when he executed the same to Hatter. The testimony seems to have been taken by depositions, and copies have been appended to, and made a part of the bill of exceptions. The defendant contended, that the imprisonment was lawful, being under a warrant from a justice of the peace. On this, the court charged the jury, that if the plaintiff, Greenlee, was under duress of imprisonment at the time the bill of sale for said negro was executed—taken in connection with the threats and and disturbance of mind under which he labored, from this, they might infer, that the bill of sale, and the delivery of the negro, was not the free and voluntary act of Greenlee ; and if so, the contract was void, and the plaintiff would be entitled to recover, though the imprisonment may have been under a lawful warrant.

This charge of the court is assigned for error.

For the purpose of testing the correctness of the charge objected to, it will be necessary to refer to the circumstances under which the bill of sale was executed, as they appear from the evidence appended to the bill of exceptions. It appears that Greenlee was arrested in the county of Monroe, in the state of Mississippi, on a warrant charging him with stealing or concealing a negro boy named Alexnader, the property of Hatter, and that he was taken before one Bartlett Sims, a justice of the peace ; that on the return of the warrant, a compromise took place between Hatter and Greenlee, by which the latter agreed to give the former the negro boy Daniel, (the same on whose account this action was brought,) and his note of hand for five hundred dollars ; that Greenlee accordingly executed the bill of sale to Hatter for the boy, and sent for and delivered him up to Hatter. There

is nothing in the testimony, from which the inference could be drawn, that the arrest was malicious, or that it was made a pretext only to cover the duress of imprisonment.

In *Bacon*[a] the doctrine is laid down, that where a person is illegally restrained of his liberty, by being confined in a common jail, or elsewhere, and during such restraint, enters into a bond or other security to the person who causes the restraint, that he may avoid the same, for duress of imprisonment. But if a man be imprisoned by order of law, the plaintiff may take a feoffment of him, or a bond for his satisfaction, and the deliverance of the defendant, notwithstanding the imprisonment ; for this is not by duress of imprisonment, because he was in prison by course of law ; for it is not accounted in law, duress of imprisonment ; but where either the imprisonment or the duress that is offered in person, or at large, is tortious, and unlawful—for *executio juris non habet injuriam.* The doctrine here laid down, as I understand it, is this, that every restraint of a man's liberty, without warrant of law, is a duress of imprisonment ; and further, that when there is a legal and regular warrant, that if on going behind such warrant, it should be found to be bottomed on a false charge, without probable cause, and only used as a feint or pretext to cover an illegal design, it will be considered in law as a duress of imprisonment ; and further, that when the charge is well founded, if the prisoner is mal-treated, whilst so confined, that it would make his confinement duress of imprisonment, so far as to invalidate any act of his produced by such mal-treatment. The cases referred to by the counsel for the defendant, do not support a different doctrine from that laid down in *Bacon*, but as far as they go, illustrate the same principles. That of *Watkins vs. Baird*,[b] was one of arrest on a false and feigned pretext, merely to get the defendant in his possession, to extort from him a release ; and these facts were specially pleaded to destroy the bar set up by the release. Judge *Parsons* bases his opinion on the text we

29

*Margin notes:*
Hatter's ex'rs.
vs.
Greenlee.

[a] 2 Bacon, 402. Title, Duress, letter A.

[b] 6 Mass. 506.

Hatter's ex'rs
vs.
Greenlee.

a16 vol. 156.

have cited from Bacon, and held the release void, as extorted by duress of imprisonment, because the arrest, was founded on false and feigned pretences.   The case in *Vesey's Chancery Reports,*[a] was a proceeding in chancery, by the heir at law, to set aside a deed of settlement, made by a wife on her husband, when abroad with him in Flanders. The deed of settlement was procured under circumstances of great cruelty, long protracted on her, and persisted in by her husband, avowedly for the purpose of extorting from her a deed of settlement.   These circumstances, though not amounting to duress of imprisonment, were sufficient, in the opinion of the chancellor, Lord *Eldon,* to set aside the deed.   It was admitted, that it would have been difficult, if not impossible, to have avoided the deed of settlement, at law ; but Lord *Eldon* said, that although a court of law would have to try the validity of the deed, yet, that on the trial of the issue, the attention of the jury would not be confined to the mere circumstance of executing the deed ; but should be called to the question, whether the mind was not so subdued, that though the execution was the free act of the person, it was an act speaking the mind not of that person, but of another.

To apply the principles we have been discussing, to the case before us—if the Judge only intended to charge, as a general rule of law, that there might be a duress of imprisonment, although the warrant issued by the justice of the peace was a legal one, and such is its fair construction, there is certainly no error in his charge, as we have shown.   But when his charge is applied to the facts, as they appeared before him, it seems to me that it was calculated to mislead the jury into the opinion, that a party might avoid his deed, on the mere ground of its having been executed whilst under arrest. Now, whether the charge, contained in the warrant of arrest, was founded in truth or probable cause, was an inquiry, to which the jury should have had their attention directed by the court, under proper instructions for their government.   Whether it was founded in truth or not, was wholly for the jury to

decide. Whether supported by a probable cause, was a mixed question, of law and fact. The Judge should have charged the jury, what facts or circumstances would amount to a probable cause; and the jury should have decided on the existence of those facts. The charge was too broad, in leaving the jury without instructions, to decide whether there had been a duress of imprisonment.

There is another objection to the charge. It connects threats and perturbation of mind, with the duress of imprisonment, as make weights; and it is as objectionable, as making a great many suspicions, equal in weight to a direct and positive charge. Now, if the duress of imprisonment was made out in evidence, it was sufficient of itself, without invoking the aid of threats, or perturbation of mind; if it was not made out, it should not have been associated with them. If there had been such threats used as would amount to duress *per minas*, that would have been a sufficient and distinct ground for avoiding the deed. Lord *Coke*[a] has given us the four distinct grounds on which a man may avoid his own act for duress *per minas*.

First—For fear of the loss of life.

Second—Of the loss of member.

Third—Of mayhem.

Fourth—Of imprisonment.

I have never seen a case, where a man was permitted at law, to avoid his own deed, by setting up a perturbation of his mind, even if it had amounted to a prostration of its faculties. Where one has, with an evil design, seduced another into intoxication, with a view to procure his deed whilst in that state, it has in some instances been held (which is now the prevailing doctrine on the subject) that it was competent for the person so practiced on, to avoid his own act. This doctrine, however, has been received with extreme caution, and not without being often controverted; and it is allowed, not so much on the ground of the temporary mental alienation, as on the fraud of the party who has resorted to

Hatter's exrs
vs.
Greenlee.

a2 Coke's Ins.
483.

Matter's exrs
vs.
Greenlee.

this device to circumvent and obtain such an undue advantage. When the case in 16 *Vesey*, cited above, is fully considered, it gives no sanction to this doctrine. It will be recollected that, in that case, the bill was filed by the heir at law, to set aside, not an act of his own, but of the person to whom he succeeded as heir at law, who was a married woman at the time she had executed the deed. This he might have done, even if it had been a case, where she herself would not have been permitted to avoid the act. If she had been a lunatic or *non compos*, she herself could not have set it up in avoidance of her deed, but her heir would not have been under the same restraint, and after her death, he might have set it aside on that ground. That too, was a case of a settlement, made by a married woman in favor of her husband. Such settlements have always been looked on by the court of chancery with a great deal of suspicion, on account of the undue influence the husband may at all times exert over her, to sustain such settlements; therefore, it should always appear clearly and manifestly, to be the free and voluntary act of the wife.

We are of the opinion that the judgment must be reversed, and the cause remanded.