## The State *v.* Weed.

A *void* process affords no protection to the officer serving or attempting to serve the same. Process may be void as to the parties, but voidable only, as to the officer.

Where a process or warrant is regular and legal in its frame, bearing upon its face all the legal requisites to make it perfect, both in form and substance ; and it appears to have been issued by a court or magistrate having jurisdiction of the subject-matter, and of the person of the respondent, the officer will be protected in its service, notwithstanding any error or irregularity in the previous issuing of the same, or any imposition practised upon the court in obtaining it.

In the service of criminal process, an officer is not to be influenced or governed by the purposes, designs, or objects of complainants, but by his precept ; and if the process be regular and legal upon its face, and within the jurisdiction of the magistrate to issue, the officer will be protected in its service, although the complainant had illegal designs in causing it to be issued, and although the officer knew that the warrant had been procured by the complainant to accomplish improper and illegal objects.

An officer will be protected in the service of process, regular and legal upon its face and within the jurisdiction of the magistrate to issue, although the foundation of the complaint on which the warrant issued be false and groundless. He is not to look beyond his precept.

A person resisting an officer in the service of such process is liable to indictment.

INDICTMENT, for assaulting and obstructing Enoch Remick, a deputy-sheriff, in the service of a warrant against said Weed, on a complaint made by one Nancy Pulsifer, for assault and battery.

It appeared on the trial, that the complaint and warrant were in due and regular form, and fair upon the face ; the complaint

being signed by said complainant, and the certificate of the oath by W. A. Kimball, Esq., a justice of the peace of the county of Carroll; the warrant also being signed by him; and that they were put into the hands of said Remick, with directions for him to serve the warrant.

The facts, however, in regard to the making of the complaint and warrant, were as follows : The said Nancy Pulsifer, and a friend with her, went to said Kimball to have the complaint and warrant made out. Kimball made out the complaint and warrant at his office, and signed his name to the certificate of the oath, and also to the warrant, and went to his house, where the said Nancy was, intending to have her sign the complaint there, and to administer the oath to her ; but it was afterwards determined to have the warrant returned before some other one, and Kimball gave it to said Nancy, and sent her to Samuel S. Quimby, Esq., another magistrate, with directions to have Kimball's name erased from the papers, and for Quimby to administer the oath, and sign them. She signed her name to the complaint in the presence of Quimby, and Quimby administered to her the oath, but he did not erase Kimball's name from the papers, or affix his own. Remick knew nothing about the facts in regard to the manner in which the complaint and warrant had been made out, but when put into his hands they appeared to be duly executed.

It further appeared, that when Remick went to arrest Weed, Weed drew a pistol and fired it, and struck Remick over the head with a stick or club, cutting through his hat, and inflicting a somewhat severe blow upon his head.

The respondent contended that he was justified in doing what he did, and offered to introduce "evidence tending to show that Remick knew that the complaint and warrant against said Weed were to be used for the purpose of enabling Nancy Pulsifer and others to get the wife of said Weed's father out of the possession of her husband, and not for the purpose of arresting and punishing said Weed." But the Court ruled the evidence inadmissible as a defence to this prosecution. The respondent further proposed to introduce evidence that the foundation of the complaint on which the warrant was issued was false and ground-

less; but the court ruled it inadmissible. The respondent's counsel requested the court to instruct the jury that said warrant was not a legal one; "that, if the complaint was not under oath administered by the magistrate who signed the warrant, it was not a lawful warrant;" "that the warrant, being issued on the complaint against the respondent, not being under the oath of the complainant by the magistrate, is contrary to the 19th article of the Bill of Rights, and therefore illegal." The court declined so to instruct the jury, but did instruct them that if, when the warrant came into Remick's hands, the complaint was duly signed by said complainant, and the certificate of the oath purporting to be administered to her, and the warrant, were also duly signed by said Kimball, and the papers were all fair and legal upon the face, it was sufficient.

There was some evidence tending to show, that Weed did not know that Remick had a warrant against him, and was seeking to arrest him. There was also evidence tending to show that he did know it, and was told by Remick himself, before he attempted to arrest him, that he had the complaint and warrant, with orders to arrest him. On this point, the court instructed the jury that if they found that Weed did not know that Remick had a warrant, and was seeking to arrest him, then he was not guilty; but if they found that he did, then the point was made out. To the several rulings and instructions of the court the respondent's counsel excepted.

A verdict having been returned against the prisoner, he moved to set the same aside, and for a new trial, for supposed error in the decisions of the court, and the questions arising upon said motion were reserved and assigned to this court for their determination.

*Sullivan*, Attorney-General, for the State.

1st Objection. The process by virtue of which Remick attempted to arrest the respondent was illegal.

Our answer is, that, " If one resist an officer in the execution of a process issued by a court having jurisdiction of the subject-matter, and if the process is regular on the face of it, the person

so resisting is liable." Roscoé's Criminal Evidence, 620, 621; 5 Wend. 170 ; 16 Wend. 514 ; Id. 562 ; 4 Mass. 232 ; 6 Mass. 422 ; 13 Mass. 286 ; Id. 272 ; 18 Mass. 459 ; 10 Johns. 138 ; 12 Johns. 259 ; 1 East's Crown Law, 309.

2d Objection. The foundation of the complaint on which the warrant was issued, was false and groundless.

Our answer is, that, " In all kinds of process, both civil and criminal, the falsity of the charge contained in such process, that is, the injustice of the demand in one case, or the party's innocence in the other, will afford no matter of alleviation for killing the officer ; for every man is bound to submit himself to the regular course of justice." Roscoe's Criminal Evidence, 621 ; 1 East's P. C. 310 ; Hale's P. C. 457. " It is not necessary that a public officer should notify himself to be such, by express words, but it shall be presumed that the offender knew him to be such." 1 Hale's P. C. 461 ; Wharton's Criminal Law, 318.

Another objection is, that evidence was rejected tending to show that Remick *knew* that the complaint and warrant against Weed were to be used for the purpose of enabling Nancy Pulsifer and others to get the wife of Weed's father out of the possession of her husband, and not for the purpose of arresting and punishing said Weed. The objection was not that he did, or aided in doing, an illegal act, but merely, that the evidence rejected tended to show that he *knew* that the process was intended to enable Nancy Pulsifer and another to get the wife of respondent's father out of her husband's possession. However unjustifiable might have been the objects of the complainant, the officer was bound to execute the warrant of the magistrate, and was liable if he failed to do it. Even if the officer had conspired with others (which is not pretended) to use the process for an illegal purpose, still the evidence was properly rejected. It could be no defence for obstructing the officer. "Officers are punishable for corruption, or for oppressive proceedings, either by indictment, attachment, or action at the suit of the party injured." Bacon's Ab. tit. Office and Officers, N. ; 6 Mod. Rep. 96.

A citizen is bound to submit to process ; and it is not left to

his decision whether the process is procured for an illegal purpose, or whether the justice acted fraudulently. Roscoe's Criminal Evidence, 621; East's P. C. 310; 1 Hale's P. C. 457.

*Emerson,* (with whom was *J. Eastman*) for the respondent.

I. The process by which Remick attempted to arrest Weed was illegal and void.

1. An arrest is illegal whenever process is void; when the court issuing it has no jurisdiction, or exceeds its jurisdiction. 1 U. S. Digest, 235, referring to *Tracey* v. *Williams,* 4 Conn. 107; *State* v. *Leach,* 7 Conn. 456; 1 Chitty's Crim. Law, 61; *State* v. *Curtis,* 1 Hayw. (N. C.) Rep. 471.

2. Justice Kimball had no jurisdiction to issue a warrant unless supported by oath or affirmation. 19th art. Bill of Rights; 1 East's Crown Law, 309, § 77, citing *Simpson's case,* 4 Inst. 333; *Holt's* opinion in *Tooley's case,* Foster's Crown Law, 313.

3. The warrant was signed and sealed by Justice Kimball before the complaint was signed or sworn to, and, consequently, before complaint was made, and, therefore, an arrest by Remick would be illegal. 1 East's Crown Law, 312, citing 6 Term Rep. 122. Also see 19th art. Bill of Rights.

4. It was a *blank warrant;* which, says *East,* "is highly reprehensible. It *withdraws from the ministers of justice that protection* which the law, when properly executed, was meant to afford them, and thereby holds out a temptation for future resistance." 1 East's Crown Law, 311, citing R. Stokely, 1772, Foster's MSS.; Stat. 24 Geo. II. ch. 44, § 6, (cited by the Attorney-General, as from 1 East's Crown Law, 309,) was never adopted in this State, but a practice directly opposed to it, as will appear from authorities hereafter cited. And none of his cases from the Massachusetts Reports sustain his position, unless it be 13 Mass. 286, which is unsustained by authorities, and is the *dictum* of a Judge only, and opposed by the Massachusetts cases generally, and by New Hampshire practice and authorities.

II. A person may resist an unlawful taking without legal cause. In *rescous* of cattle distrained, the defendant may defend by showing distress without legal cause. *Melody* v. *Reab,*

The State *v.* Weed.

4 Mass. 474. And an owner of goods may resist an officer attempting to seize them under a writ against a third person. *Commonwealth* v. *Kennard*, 8 Pick. 133 ; *Nichols* v. *Thomas*, 4 Mass. 234 ; Buller's N. P. 172 ; *Richardson* v. *Duncan*, 3 N. H. Rep. 511 ; *Shaw* v. *Spooner*, 9 N. H. Rep. 199 ; 2 U. S. Digest, 54, citing 1 Porter, 222.

III. Respondent may resist against a lawful process used for an illegal purpose ; and the evidence as to the purpose of Remick's arrest was wrongly excluded. Buller's N. P. 172, citing 5 Coke, 119 ; Allen, 92.

1. It is illegal abuse to use the criminal process of the State to extort money or compel the payment of debts. *Shaw* v. *Spooner*, 9 N. H. Rep. 199 ; *Plumer* v. *Smith*, 5 N. H. Rep. 553 ; *Hinds* v. *Chamberlain*, 6 N. H. Rep. 230. Surely, then, it is illegal to use the criminal process of the State to commit crime.

2. "It is well settled," says *Richardson*, C. J., "that when there is an arrest for improper purposes without a just cause, or when an arrest for a just cause without lawful authority, or when there is an arrest for a just cause and under lawful authority for an unlawful purpose, it must be considered duress." *Richardson* v. *Duncan*, 3 N. H. Rep. 511 ; Buller's N. P. 172 ; *Watkins* v. *Bard*, 6 Mass. 508.

IV. "Duress of imprisonment and duress *per minas* is a sufficient excuse for many misdemeanors, and pardons homicide *se defendendo.*" 1 Black. Com. 132, 133. It is an illegal restraint of liberty. 1 Black. Com. 139. Every illegal restraint of a person's liberty is duress of imprisonment ; and when a warrant has been regularly obtained, but on a false or feigned pretense, to cover an illegal design, arrest under it will be duress of imprisonment, and any act produced by it will be void. 2 U. S. Digest, 54.

V. If Remick *knew* the process was for the purpose of effecting an illegal object or design, in attempting to execute it he *aided* or *assisted* therein, and was guilty of the conspiracy. Therefore, the evidence as to the falsity of the charge, and the object of the process, with Remick's knowledge, was wrongly excluded.

VI. Quimby's testimony was wrongly admitted. Nothing short of the magistrate's certificate is evidence of the oath of the party to the instrument. 1 Tyler's Rep. 444.

EASTMAN, J. It is well settled, that all acts done under *void* process are illegal; and that a void warrant affords no protection to the officer serving or attempting to serve the same. Such is the general current of all the authorities; and they appear to be based upon sound and fixed principles. The meaning of the term "void," when applied to legal process, is, therefore, material to be considered. A process may be void, so far as the parties originating and issuing the same are concerned, while at the same time it may be a good precept for the officer serving it. A complainant and magistrate may both be liable for the issuing of a warrant erroneously and irregularly, without cause and without jurisdiction; while the officer, into whose hands it is committed, finding it regular and legal upon its face, is not only protected in its service, but bound to obey it. As connected with the magistrate and party, it is a void warrant *in toto*, but in the hands of the officer, voidable only. The want of a clear distinction in this respect, has occasionally led to some confusion; but when this distinction is kept in view, there is no difficulty in arriving at correct results.

A process is void as to *all* connected with it when upon its face it wants essential legal form and substance. A seal, for instance, being one of the legal requisites to give vitality to a process, is essential, and its absence renders the precept absolutely void. *State* v. *Curtis,* 1 Hayw. (N. C.) Rep. 471. If a warrant is issued upon a charge purporting to be based upon a certain law, and that law has been repealed or never had an existence, the warrant is void. In such a case, the process shows upon its face that it is a nullity. Or if the warrant describes no offence, or sets forth no person to be arrested, but, in attempting to do it, is general and unintelligible, in one or both respects. Or if it is issued for an offence not within the jurisdiction of the magistrate to try, or to arrest a person over whom he has no legal authority, and these facts appear upon the

The State *v.* Weed.

papers, they are void. Or if an officer undertakes to serve a process not within his precinct, his acts are all void. 1 Chitty's Crim. Law, 61 ; 1 East's Crown Law, 309 ; *Grumon* v. *Raymond,* 1 Conn. 40 ; *Tracey* v. *Williams,* 4 Conn. 107 ; *State* v. *Leach,* 7 Conn. 456 ; *Nichols* v. *Thomas,* 4 Mass. 232. Such are some of the instances of precepts absolutely void. In all such cases the process shows upon its face its illegality ; and the officer will not be protected, because he is acting by virtue of papers which, it is apparent from their inspection, have no legal vitality. But where the magistrate exceeds his jurisdiction, or the warrant has been irregularly or erroneously issued by him, or the party has procured it through fraud and without any cause, the magistrate, or party, or both may become liable, and the warrant may be no protection to them. It may be a void precept so far as they are concerned, but if fair and legal upon its face, voidable only, so far as the officer is to be affected. In a recent case in the Queen's Bench, (*Andrews* v. *Morris,* 1 Ad. & Ellis, New Rep. 4, 17,) it is said, that there is a well-known distinction between the cases of the party, and of the sheriff or officer. For the latter, it is enough to show the writ only. This distinction is recognized in all the well-considered cases to be found in the books ; and it is upon this basis that the doctrine of protection to officers in the service of legal process, has been so broadly laid down. How far this doctrine is held to go by many of the writers on criminal law, and to what extent this protection has been carried by some of the most learned tribunals, we will, for a few moments, consider. *East* lays down the doctrine as follows : — "If the warrant be legal in the frame of it, and issue in the ordinary course of justice from a court or person having jurisdiction in the case, it is sufficient. No error or irregularity in the previous proceedings will affect it ; or excuse the party killing the officer in the execution of it from the guilt of murder." 1 East's P. C. 309, § 78. Foster, Russell, and Roscoe, and, so far as we have been able to discover, all elementary writers upon criminal law, take the same view of the matter. *Foster,* in his Crown Law, page 312, holds the following language : — "In the case of a warrant from a justice of the peace, in a matter wherein he

hath jurisdiction, the person executing such warrant is under the special protection of the law, though such warrant may have been obtained by gross imposition upon the magistrate, and by false information touching matters suggested in it." Mr. *Roscoe*, in his Criminal Evidence, pages 750, 751, third edition, states it in this wise :—" Where a peace-officer, or other person having the execution of process, cannot justify without a reliance on such process, it must appear that it is legal. But by this it is only to be understood that the process, whether by writ or warrant, be not defective in the frame of it, and issue in the ordinary course of justice, from a court or magistrate having jurisdiction in the case. Though there may have been error or irregularity in the proceedings previous to the issuing of the process, yet, if the sheriff or other minister of justice be killed in the execution of it, it will be murder ; for the officer to whom it is directed must, at his peril, pay obedience to it." "So in case of a warrant obtained from a magistrate by gross imposition, and false representations touching the matters suggested in it." "So, though the warrant itself be not in strictness lawful, as if it express not the cause particularly enough, yet, if the matter be within the jurisdiction of the party granting the warrant, the killing the officer in the execution of his duty, is murder, for he cannot dispute the validity of the warrant if it be under the seal of the justice." *East*, adds further, that " in case of an indictment for such a murder, it is only necessary to produce the writ or warrant ; for however erroneously the process issued, the sheriff must obey, and is justified by it. The sheriff and his bailiffs are bound to obey the King's writs, without inquiry." *Cotes* v. *Michill*, 3 Levinz's Rep. 20 ; *Moravia* v. *Sloper*, Willes's Rep. 30, 34. Mr. *Chitty*, also, lays down the same general principles as the other elementary writers above quoted. 1 Chitty's Criminal Pleading, 40.

The American doctrine upon the subject is equally decisive. In *Warner* v. *Shed*, 10 Johns. 138, it is said, that where the court has jurisdiction of the subject-matter, it is sufficient to justify the officer executing the process ; for the officer is not bound to examine into the validity of its proceedings, or the regularity

The State *v.* Weed.

of its process. In 16 Wendell, 514, it is held, that a ministerial officer is protected in the execution of process issued by a court or officer, having jurisdiction of the subject-matter and of the process, if it be regular on its face, and does not disclose a want of jurisdiction. Process, regular upon its face, is sufficient to protect a ministerial officer acting under it, although it may have been issued *without authority. Noble & al.* v. *Holmes,* 5 Hill's (N. Y.) Rep. 194. If the process be regular and legal upon its face, the officer will be protected, though it be issued upon a judgment rendered *without jurisdiction.* 7 Hill's (N. Y.) Rep. 35. When a writ from a court of competent jurisdiction is placed in the hands of an officer, he is *bound* to execute it, without inquiry into the regularity of the proceedings on which it is grounded. *Cady* v. *Quinn,* 6 Iredell's (N. C.) Rep. 191. A sheriff cannot excuse himself from the service of process because it is erroneous or irregular, but only when it is absolutely void. *Stoddard* v. *Tarbell,* 20 Verm. Rep. 321. Some of the cases go very far, quite as far as we should be willing to ; especially that class which would *compel* an officer to execute voidable process. The general principle, however, we hold to be quite clear : That where the process or warrant is regular and legal in its frame, bearing upon its face all the legal requisites to make it perfect in form, and, so far as can be discovered from its inspection, in substance also, and it appears to have been issued by a court or magistrate having jurisdiction of the subject-matter, and of the person of the respondent, the officer is to be protected in the service, notwithstanding any error or irregularity in the previous issuing of the same, or any imposition practised upon the court in obtaining it ; and that the party resisting the officer is liable. *Savacool* v. *Boughton,* 5 Wend. 170 ; *Rogers* v. *Mulliner,* 6 Wend. 597 ; *Horton* v. *Hendershot,* 1 Hill's (N. Y.) Rep. 118 ; *Fox* v. *Wood,* 1 Rawle, 143 ; *Jones* v. *Hughes,* 5 Serg. & Rawle, 299 ; *Paul* v. *Van Kirk,* 6 Binn. Rep. 103 ; *Sturbridge* v. *Winslow,* 21 Pick. 83 ; *Wright* v. *Gould,* 1 Wright's Rep. 709 ; *Brother* v. *Cannon,* 1 Scam. 200 ; *Robinson* v. *Harlan,* 1 Scam. 237 ; *State* v. *Curtis,* 1 Hayw. (N. C.) Rep. 471 ; *Foster* v *Gault,* 2 McMullan's (S. C.) Rep. 335.

The State *v.* Weed.

The authorities cited by the respondent's counsel have all been examined, and when investigated at length as they appear in the books to which reference is made, they show no material conflict with the general doctrine above laid down, but rather sustain it. *Tracey* v. *Williams,* was an action of *trespass* against a justice of the peace for imprisoning the plaintiff, who had been arrested by the justice under the riot act, on *view,* and committed after having been ordered to find sureties to appear at a higher tribunal. The court held, that the magistrate exceeded his power; that he might *arrest* on *view,* but could not examine and commit without regular complaint made. *State* v. *Leach,* was an information for prison-breach. The defendant had been committed upon a charge based upon a statute which was repealed before the acts complained of were done by him. There was no law in force when the acts were committed making those acts a crime. After being committed on such a warrant he broke jail, and this information was filed against him. It was held, that, being imprisoned for an offence which was unknown to the law, he might lawfully liberate himself, using no more force than was necessary to accomplish the object. The court say, " the statute creating the offence with which the prisoner was charged and for which he was committed, was *repealed* before the acts alleged to be a crime were done. Consequently, all the proceedings were void." This appearing upon the mittimus or warrant, disclosed the illegality of the proceedings, and showed them to be void. *State* v. *Curtis,* was where the warrant was without seal, and the court very correctly held the process void. But in the same case the court also say, that if a justice of the peace issue a warrant for a matter within his jurisdiction, although he may have acted erroneously in the previous stages, the officer should execute it. The case from 1 East's Crown Law, 309, (*Simpson's case,*) was where the constable undertook to serve a warrant issued by a court that had no jurisdiction of the subject-matter, and that appeared. The case from Foster, (*Tooley's case,*) was where the constable was endeavoring to serve process out of his precinct. He had no more authority out of his precinct than a private individual. He was *no* constable. So says

the note to the case. *Houson* v. *Barrow*, 6 Term Rep. 122, cited in 1 East, 312, was a motion to discharge from arrest, on the ground of irregularity; the sheriff's name having been inserted in the writ after it was issued. It was held that the practice was irregular, and the motion was granted. The practice of issuing blank warrants, which is reprobated by *East*, has no parallel in the practice of the courts of this State, except in civil cases. The practice was this: The under-sheriff signed blank warrants under the seal of the office and gave them to a clerk to fill up as occasion might require, and they were made out by the clerk to the persons calling for them, accordingly; and the persons to whom they were delivered put in the names of whom they pleased. We entirely concur with Mr. *East*, that the practice ought to be censured in severe terms. The remarks of the court in regard to blank warrants upon which *East* predicates his suggestions were made in *Stokely's case*, in 1771. Subsequently, in 1800, the case of *Rex* v. *Winnich*, 8 Term Rep. 454, arose. Here the magistrate kept by him a number of blank warrants ready signed. On being applied to, he filled up one of them and delivered it to the officer, who, in endeavoring to arrest the party, was killed. It was held, that this was murder in the person killing the officer, and he was accordingly executed.

Let us now recur to the facts disclosed in the first point of the case, to which this law applies. It appears, that the warrant which Remick was directed to serve and in the service of which he was resisted by the respondent, Weed, was based upon a complaint for assault and battery. The complaint and warrant were both in due and legal form; the complaint being signed by the complainant, and the certificate of the oath and the warrant both duly signed by Kimball, a magistrate of the county. Nothing is defective in form, and all is regular and legal upon its face. The warrant has all the legal requisites of our statute; it is issued for an offence clearly within the jurisdiction of the magistrate, and he is acting within the limits of his county. So far then as appeared upon its face, it was a legal precept, which would protect an officer in its execution. But, it was irregularly

issued. The acts of Kimball and Quimby were irregular and illegal. And, although we do not question that both intended to act honestly, yet it is quite clear that they acted inconsiderately and illegally. But are their irregular acts to deprive the officer of his legal protection? It is said in the argument, that "Quimby's testimony was wrongly admitted; that nothing short of the magistrate's certificate is evidence of the oath of the party to the instrument." This point is not raised by the case, and therefore could not properly be considered here. But if considered, we apprehend it could not aid the respondent. If Quimby was wrongly admitted as a witness to show facts behind the warrant, then also was Kimball. The testimony of both, if admissible at all, went to invalidate a warrant fair and legal on its face, and so far as it appeared, affording ample protection to the officer. Their testimony laid the very foundation of the defence, and without it the respondent could not have raised this first important point in the case. Every thing touching the manner of the issuing of the complaint and warrant would have been unknown. It does not then lie in the respondent's power, first to obtain facts on which to base his defence, and then object to the channels through which alone those facts come. If the sources of the information are to be excluded, the information itself coming from them must necessarily share the same fate.

But to return to the question, shall the irregular acts of the magistrate deprive the officer of his legal protection in the service of the warrant? If so, then the warrant was void in his hands; he can claim no protection from it, and this indictment cannot be sustained. From the most careful and extended examination which we have been able to give this point in the case, we have no hesitancy in holding, that this warrant comes clearly within the principles which we have endeavored to discuss in the preceding pages of this opinion, and for which the authorities seem to be so full and explicit; and that it was a complete and ample protection to the officer. As affecting Kimball and Quimby and the complainant, it was irregular and void; but as far as Remick was to be affected, voidable only. In the examination of this point we have gone upon the assumption,

that the proceedings of the magistrate and party, prior to the issuing of the warrant, may all be inquired into, notwithstanding the process when delivered to the officer is in due and regular form and within the jurisdiction of the justice to issue. According to the distinction which we have taken between void and voidable process, and the liabilities of the parties in the issuing and executing of the same, in an action against the justice or party for irregularity or corruption, these investigations could be made ; but in any proceeding between the officer and the respondent, it may well be questioned whether the Court will go behind the warrant, if it be fair and regular in its frame and within the jurisdiction of the justice to issue. Many of the authorities above quoted, lay it down distinctly, that the production of the warrant or writ is all that is required by the officer, and that the prior proceedings cannot be investigated ; that upon an indictment for killing the officer while attempting to serve a process, it is sufficient to produce the writ or warrant by virtue of which the officer was acting. Roscoe's Crim. Ev., (3d ed.) 750, 751 ; 1 East's P. C. 370, § 78. But as to this matter, it is not necessary to make any decision, although it would seem there can be but little doubt in regard to it ; since we hold, that the warrant, being fair and legal upon its face, was good and sufficient for the officer, and afforded him ample protection, notwithstanding the irregular and erroneous proceedings of the magistrates.

The second question raised in the case is, whether " the evidence tending to show that Remick *knew* that the complaint and warrant were to be used for the purpose of enabling Nancy Pulsifer and others to get the wife of said Weed's father out of the possession of her husband, and not for the purpose of arresting and punishing said Weed," was properly rejected or not. With regard to this point, the respondent's counsel has taken several positions. His first is, that a person may resist an unlawful taking without legal cause ; and that in *rescous* of cattle distrained, the defendant may defend by showing a distress without legal cause. To sustain this position he cites *Melody* v. *Reabe*, 4 Mass. 474. An examination of this case shows that it

was an action brought to recover the penalty provided by statute for rescue of cattle distrained, and the court decided that, by the common law, the *illegality* of the distress might be shown in defence of an action for rescue ; but by this statute it was provided that such a defence should not be set up. It will readily be perceived, that there is a marked difference between an illegal distress of cattle by a party, and the doings of an officer under legal process.

His second position is, that an owner of goods may resist an officer attempting to seize them under writ against a third person. Several authorities are cited to sustain this position. But there was no necessity for this. The accuracy of this doctrine, we are not disposed at this time to question. If a sheriff has a writ against A., and by virtue of it undertakes to seize the property of B., B. may resist. The sheriff has no right to take his property. Were the suit against B., it would present an entirely different question, and one of equally easy solution.

His third position is, that a respondent may resist against a lawful process used for an illegal purpose ; and the evidence as to the purpose of Weed's arrest was wrongly excluded. To sustain this position he cites Buller's N. P. 172. This, it will be found, is a discussion of defences to actions of covenant, debt, contract, &c., and it is said that duress is a good defence to such actions. In the case from Allen, also cited, it was held, that duress is a good defence to debt on bond. *Shaw et al.* v. *Spooner*, 9 N. H. Rep. 190, was an action on a note given to settle a criminal prosecution, as was alleged, and the court held such a consideration void. So also with the cases from the 5th and 6th N. H. Rep. Both were actions on notes given to suppress or settle criminal prosecutions, and the same decision was made. The case from 3 N. H. Rep. was where money had been paid to procure a discharge from arrest, and the court held it might be recovered back. *Watkins* v. *Baird*, 6 Mass. 506, was assumpsit. Plea, a release ; replication, that the release was procured by duress. The duress being proved, it was held, that the release was void. The case from 1 Porter, 222, is the same doctrine as that of *Watkins* v. *Baird.* Now, although these

The State *v.* Weed.

authorities may be very good law in actions between individuals, where questions of duress and the settlement of criminal prosecutions may arise, yet we do not discover their force to sustain the position that the evidence as to the purpose of Weed's arrest was wrongly excluded. They might perhaps be indirect authority in private actions between the Weeds and Nancy Pulsifer, on the ground that she was using the warrant for illegal purposes, but we cannot discover their applicability to the present case.

In deciding this point, we are to proceed upon the supposition that the complainant had illegal objects to obtain in procuring the warrant. We are also to take it, that Remick *knew* that her objects were illegal. But does that excuse this respondent from committing an illegal and criminal act himself? Surely not. Many prosecutions that are commenced, proceed from no very worthy motives or commendable objects. Sometimes they are instituted to bring about a settlement of other prosecutions, either criminal or civil. At other times to extort money from the offender; and sometimes to accomplish other illegal purposes. But an officer, with a legal process in his hands, is not to be governed by the motives or objects of prosecutors. His duty is plain and imperative. It is to execute the process, regardless of any such influences. Suppose a theft has been committed, or a rape, and the complainant causes a warrant to be issued, with no other or better object than to extort money from the offender, and the officer knows that such is the object, is he to refuse to serve the warrant? Is a higher crime to go unpunished because a less one is meditated? If such be the doctrine, then every offender, however great his crime, may resist and kill an officer who shall attempt to serve a process which he knows has been procured from improper motives and corrupt designs on the part of the complainant. Every murderer may go at large, because the complainant having procured a warrant to effect some criminal object, and not to punish the offender, the officer into whose hands the warrant has been committed, having been made acquainted with the designs of the complainant, does not execute the process; for *knowing* its object, he has no protection from the law. This may seem

23 *

to be stating the position rather strongly, and yet it is only carrying out the principle contended for in this case. But we think it will not answer to hold any such doctrine. Officers are punishable by indictment or civil suit, for all illegal or oppressive acts done by them. Coke upon Littleton, 233, 234; Bacon's Ab. tit. Office & Officers, N.; *Rex* v. *Bainbridge*, 3 Douglas, 327; *Rogers* v. *Brewster*, 5 Johns. 125; *State* v. *Stalcup*, 2 Iredell, 50; *Geter* v. *Commissioners*, 1 Bay's (S. C.) Rep. 324. But while in the execution of their offices they are under the peculiar protection of the law, a protection which is founded in wisdom and in every principle of political equity; for without it, the public tranquillity cannot possibly be maintained, or private property secured; nor in the ordinary course of things will offenders of any kind be amenable to justice. Such is the language of *Roscoe*, who goes so far as to say, that every citizen is bound to submit even to illegal process; and *East* and *Hale* express the same opinion. Baron *Hume* (1 Hume, 250,) says that if, instead of submitting for the time and looking for redress afterwards, the defendant shall resist an illegal warrant, it shall be murder. But it is not necessary to carry the principle to that extent in this case. The point is, that the complainant had an illegal design in procuring the warrant and causing it to be executed; and we decide that the motives, intents, and designs of complainants have nothing to do with the duty of an officer. He is to execute all precepts put into his hands which are fair and legal upon their face, and will be protected in so doing, even though he *knows* that the objects of the complainants are illegal. Nor are we without high American authority for sustaining this position. In *Webber et al.* v. *Gay et al.* 24 Wend. 485, it was held, that a constable was protected in the service of a process which he *knew* was irregular and erroneous. The Chief Justice, in delivering the opinion of the court, says: "I am not aware that the court has ever looked beyond the process to see if the officer was cognizant of the irregularity. The general rule is, that if the justice has jurisdiction of the subject-matter, and if the process is regular upon its face, the officer is protected. To go beyond this would lead to a new

The State *v.* Weed.

and troublesome issue, which would tend greatly to weaken the reasonable protection to ministerial officers. Their duties, at best, are sufficiently embarrassing and responsible." Such, also, is the doctrine of *The People* v. *Cooper*, 13 Wend. 379. In *The People* v. *Warren*, 5 Hill's (N. Y.) Rep. 440, it was held, that " a ministerial officer is protected in the execution of process regular and legal upon its face, though he has *knowledge* of facts rendering it *void* for want of jurisdiction." This prosecution was an indictment against Warren for an assault and battery upon one Johnson, an officer, and resisting him in the service of a warrant against Warren. The warrant was issued by the inspectors of election of the city of Utica, for interrupting the proceedings of the election, and disorderly conduct in their presence. The respondent offered to prove, that he had not been in the presence or hearing of the inspectors at any time during the election, and *that Johnson knew it.* The evidence was ruled inadmissible, and the ruling sustained by the court above. In deciding the matter, the court say: " Although the inspectors had no jurisdiction of the subject-matter, yet as the warrant was regular upon its face, it was a sufficient authority for Johnson to make the arrest, and the defendant had no right to resist the officer. The *knowledge* of the officer, that the inspectors had no jurisdiction, is not important. He must be governed and is protected by the process, and cannot be affected by any thing which he has heard or learned out of it. The officer is protected by process regular and legal upon its face, whatever he may have heard going to impeach it."

Having discussed the two principal points of the case at so much length, it is hardly necessary to add much respecting the others, inasmuch as the disposition of them follows, almost necessarily, the decision of the first two. A word or two, however, in regard to them. It appears from the case, that the respondent proposed to introduce evidence, that the foundation of the complaint on which the warrant issued, was false and groundless, but the Court excluded the evidence.

Many of the authorities already cited are applicable and direct upon this point, and we will therefore add only two. The

first is to be found in 1 East's P. C. 310, and is as follows : " Where a warrant has been obtained improperly and by *perjury*, it varied not the offence of him who killed the officer in attempting to execute it." The other is the case of *Watson* v. *Watson*, 9 Conn. 141. In this case it appeared that the officer *knew* that the plaintiff had no cause of action, and the point was decided in these words : " It is the duty of an officer, in which he will be protected, to obey, without investigating the cause of action, every precept put into his hands for service, which appears on its face to have issued from competent authority and with legal regularity. Consequently, his knowledge of facts evincing the existence or *want* of a cause of action, does not affect his duty or liability." The court also say : " Obedience to all precepts committed to an officer to be served, is the first, second, and *third* part of his duty. Being a legal officer, it became his duty, regardless of any knowledge, or supposed knowledge, that there existed no cause of action, to serve the writ committed to him promptly, unhesitatingly, and without restraint from the above-mentioned cause. This, I consider so firmly established as to render the proposition self-evident. The facts on the face of the writ constitute his justification, because he was obliged to obey its mandate."

There can be no doubt in regard to this point. To carry out the doctrine contended for would be subversive of all legal proceedings. How many civil suits are instituted without any cause of action whatever ? and how many criminal prosecutions are entirely without foundation ? To hold that an officer is not to be protected in the service of such precepts, but may be resisted with impunity, would impose upon him the necessity of investigating the facts and deciding every case correctly, before his property or life would be safe. No man who regarded either, would accept the office. For if he could be resisted in the service of process where the " foundation of the complaint was false and groundless," not only would his life be exposed in its service, but he must, as a necessary consequence, be liable as a trespasser, or for false imprisonment, whenever it should appear that the proceeding was without cause. The mischiefs

resulting from such a doctrine must be very great, and are too apparent to require further comment.

The official character of Remick not being in dispute, but well known to the respondent, the instructions of the court to the jury, " that if they found that Weed did not know that Remick had a warrant and was seeking to arrest him, then he was not guilty," were quite as favorable to the prisoner as the law would permit. 1 Hale's P. C. 461 ; *State* v. *Caldwell*, 2 Tyler's (Vermont) Rep. 212 ; Wharton's Cr. Law, 318. But no objection to this ruling has been taken in the argument. If either party had cause to complain of these instructions, it would probably be the government. No farther examination of them is necessary.

Having gone through with all the general positions presented in the case, we might stop here. But, as we are desirous of looking at this case in all its particulars, there is one other matter to which we will devote a moment's attention. It is, that these proceedings were contrary to the nineteenth article of the Bill of Rights, and therefore illegal. This article provides that no warrants shall issue if the cause or foundation of them be not previously supported by oath or affirmation. It will be perceived that this point, going to the regularity of the proceedings, is but a subdivision of the first general position, and that the doctrine laid down there covers this exception ; still, as there has been an adjudication where this direct question arose, we will quote it here. We refer to *Sanford* v. *Nichols*, 13 Mass. 286. In that case a warrant, issued by virtue of the Constitution of the United States, was put into the hands of an officer, commanding him to search for certain goods. The warrant recited that a complaint had been made, but none was annexed to, or accompanied the warrant, nor does it appear by the report of the case that any complaint was ever actually made. One of the questions raised was, that a complaint in writing, under oath, should be shown as the foundation of the warrant, the Constitution of the United States providing that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." *Parker*, Chief Justice, in delivering the opinion of

the court, says: " We think that the defendants could have justified the acts complained of, by showing a regular warrant from a magistrate having jurisdiction over the subject, without showing that it was founded upon a complaint under oath. It will not do to require of executive officers, before they shall be held to obey precepts directed to them, that they shall have evidence of the regularity of the proceedings of the tribunal which commands the duty. Such a principle would put a stop to the execution of legal process, as officers so situated would be necessarily obliged to judge for themselves, and would often judge wrong as to the lawfulness of the authority under which they are required to act. It is a general and known principle, that executive officers, obliged by law to serve legal writs and process, are protected in the rightful discharge of their duty, if those precepts are sufficient in point of form, and issue from a court or magistrate having jurisdiction of the subject-matter. If such a magistrate shall proceed unlawfully in issuing the process, he, and not the executive officer, will be liable for the injury consequent upon such act."

*The requirements of the Constitution of the United States* are quite as explicit as those of our Bill of Rights ; and the language of Chief Justice *Parker* is but the language of many other distinguished jurists, whenever the duties, obligations, and protection of officers has been the subject discussed. And after a careful and somewhat extended examination of the several positions taken by the respondent, the conclusion of the Court is, that none of the exceptions can be sustained, and that there must be

*Judgment on the verdict.*